IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**EDWARD P. HUDAK and**
**LISA M. HUDAK,**

    **Plaintiffs,**

v.         //     CIVIL ACTION NO. 1:15CV20
                              (Judge Keeley)

**SELENE FINANCE LP,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER
## DENYING MOTION TO REMAND [DKT. NO. 5]

Pending before the Court is the motion to remand filed by the plaintiffs, Edward P. Hudak and Lisa M. Hudak (collectively, the "Hudaks"). For the reasons that follow, the Court **DENIES** the motion.

**I.**

**A.**

In May 2008, the Hudaks secured a mortgage loan for the principal amount of $130,845 with a 6% fixed interest rate through the single family homeowner mortgage program administered by the Federal Housing Administration ("FHA"). They used the proceeds to purchase a home in Mount Clare, West Virginia, where they continue to reside. The deed of trust securing the loan incorporated regulations promulgated by the Department of Housing and Urban Development ("HUD"), including a requirement that the mortgage loan

servicer consider the borrower for loss mitigation alternatives to foreclosure prior to foreclosing on the home.

In June 2013, the Hudaks filed a petition for Chapter 7 bankruptcy. On "Schedule D - Creditors Holding Secured Claims," they listed the loan originator as holding the deed of trust with a claimed amount of $130,000. Although they stated that they would retain their home, they failed to express any intent to redeem the property or reaffirm the debt. Three months later, the bankruptcy court granted the Hudaks a discharge, which extinguished their personal obligation on the loan, but left intact the lienholder's right to foreclose on the home.[1]

Apparently the Hudaks continued to make regular payments on the loan until the following year, when Mr. Hudak suffered an injury that prevented him from working for an extended period. When the Hudaks fell behind in their payments, their loan servicer at the time instructed them to submit financial information and complete a request for mortgage assistance to be considered for loss mitigation alternatives to foreclosure. After reviewing the documentation, the loan servicer offered the Hudaks a forbearance agreement, which required them to make four monthly payments of

---

[1] See In re Alvarez, 733 F.3d 136, 138 (4th Cir. 2013) (citing Johnson v. Home State Bank, 501 U.S. 78, 84 (1991)).

$1738.03 from July 1, 2014 through October 1, 2014, and to resume regular payments thereafter. Under the agreement, the payments would satisfy the accrued arrearages and bring their loan current.

The Hudaks signed the forbearance agreement on June 5, 2014, and made the first payment of $1738.03 on July 1, 2014. Shortly thereafter, on July 11, 2014, they received notification from the mortgage loan originator that the servicing rights on their loan were being transferred to Selene on August 2, 2014. On July 16, 2014, the prior servicer sent the Hudaks a statement showing an outstanding principal balance of $119,799.27.

Following the transfer of the servicing rights, Selene notified the Hudaks on August 12, 2014, that their loan balance was several thousand dollars higher than the amount represented on the statement from the prior servicer. Significantly, Selene's letter failed to acknowledge the forbearance agreement. Thereafter, on September 2, 2014, Selene sent the Hudaks a notice of default and right to cure.

The Hudaks contacted Selene, which advised them that it would not honor the forbearance agreement with the prior servicer. As the complaint alleges: "Selene directed [the Hudaks] to an online link where they could print out and complete forms to submit for a new request for loan assistance. However, the forms provided by []

Selene did not comport with forms used for FHA loss mitigation, which are required by [the Hudaks'] deed of trust." (Dkt. No. 1-2 at 6). Selene also instructed the Hudaks not to make additional payments until they were in receipt of a new payment schedule.

The Hudaks filled out the new application, transmitted it to Selene on September 12, 2014, and, as directed, refrained from making additional loan payments. Nevertheless, on October 8, 2014, Selene denied the Hudaks' request for loan assistance, and required them to pay the arrearage amount in full or face foreclosure. In order to avoid falling further behind, the Hudaks attempted to make monthly payments in November and December; Selene, however, refused to accept the money and scheduled a foreclosure sale for January 8, 2015. It also continued its collection efforts by contacting the Hudaks directly, even though the Hudaks had notified Selene that they had retained counsel.

**B.**

The Hudaks filed this action in the Circuit Court of Harrison County, West Virginia, on December 30, 2014, causing Selene to cancel the scheduled foreclosure sale. Their complaint alleges breach of the forbearance agreement ("Count I"), breach of the deed of trust ("Count II"), illegal refusal to credit payments ("Count III"), unconscionable means of collection ("Count IV"), illegal

debt collection ("Count V"), and contacts after representation ("Count VI").

Selene removed the case to this Court on February 6, 2015, based on diversity jurisdiction. In its removal papers, it alleged that, "[w]hile Plaintiffs' Complaint does not specify an amount of requested damages, it nonetheless is facially apparent that the damages claimed exceed the $75,000 jurisdictional threshold." (Dkt. No. 1 at 3). The Hudaks then filed a motion to remand the case, contending that Selene "cannot prove by the preponderance of the evidence that the amount in controversy exceeds the jurisdiction threshold amount." (Dkt. No. 6 at 6).

In response to the motion to remand, Selene points out that, because the Hudaks received a bankruptcy discharge of their obligation on the loan note in September 2013, its "only recourse for recovering the unpaid loan balance is through foreclosure on the property." (Dkt. No. 7 at 1). It contends that the object of the litigation is the deed of trust, which has a total value of just over $130,000 and an unpaid balance of approximately $119,000. Alternatively, Selene urges that the combined values of the forbearance agreement, potential statutory damages, estimated attorneys' fees, and the amount already paid on the loan equal $78,844.71.

**II.**

Congress has granted federal district courts original jurisdiction in "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."[2]  28 U.S.C. § 1332(a)(1).  Moreover,

> [i]f removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that –-
>
> (A) the notice of removal may assert the amount in controversy if the initial pleadings seeks . . . nonmonetary relief[.]
>
> . . .
>
> (B) [R]emoval of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a).

28 U.S.C. § 1446(c)(2).  Finally, Selene, as the party seeking removal, bears the burden of proof.  See Ellenburg v. Spartan Motors Chassis, Inc., 519 F.3d 192, 200 (4th Cir. 2008).

---

[2] There is no dispute concerning complete diversity.  The Hudaks are West Virginia citizens.  Selene is a limited partnership, none of whose members is a West Virginia citizen.

### III.

Count II of the Hudaks' complaint asserts that the deed of trust "provides that the loan may not be accelerated or foreclosed upon until HUD regulations, including FHA loss mitigation requirements, have been complied with." (Dkt. No. 1-2 at 9). The complaint seeks specific performance of this provision by Selene. Id. For its part, Selene contends that "the specific performance requested is in fact a veiled request for injunctive relief." (Dkt. No. 7 at 5). This distinction is critical, because the value of an injunction to prevent foreclosure "is the outstanding balance of the loan." Winnell v. HSBC Mortg. Svcs., Inc., No. 2:11CV561, 2011 WL 5118805, at *2 (N.D.W. Va. Oct. 28, 2011); see also Carter v. Nat'l City Mortg., Inc., No. 1:14CV70, 2014 WL 2862953, at *3 (N.D.W. Va. June 24, 2014).

The Hudaks are less than clear about how they are entitled to specific performance under their theory of breach with respect to Count II. Their complaint suggests that Selene, in fact, considered the Hudaks for loss mitigation alternatives, but simply instructed them to use the wrong forms when submitting their request. Thus, an award of specific performance would not require Selene to consider new information, but only the same information included on FHA-approved forms.

**HUDAK, ET AL. v. SELENE FINANCE LP**                              1:15CV20

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO REMAND**

It is undisputed that Selene has not yet foreclosed on the Hudaks' home; however, it is likewise undisputed that it has expressed a clear intent to do so. It had even scheduled a foreclosure sale, which it canceled days beforehand, only after this lawsuit was filed. Because the Hudaks remain in their home, and Selene actually has not foreclosed, it is difficult to discern how Selene could have breached an alleged condition precedent to foreclosure.

The Hudaks attempt to clear up any confusion in this regard, arguing:

> To be sure, Plaintiffs claim that Defendant breached a specific provision of the applicable Deed of Trust by pursuing foreclosure. However, Plaintiffs seek to enjoin Defendant's breach solely for the purposes of compelling Defendant to engage in proper loss mitigation **before** accelerating the loan and pursuing foreclosure. In other words, Defendant's contractual right to accelerate the loan and pursue foreclosure is conditioned on its contractual duty to engage in proper loss mitigation. Accordingly, the actual object of Plaintiffs' specific performance claim is loss mitigation, not, as Defendant speciously asserts, some permanent injunction of foreclosure resulting in pecuniary loss to Defendant in the amount of the mortgage loan.

(Dkt. No. 8 at 3) (emphasis in original).

Although far from explicit, the Hudaks appear to premise Count II on a theory of anticipatory breach. That is to say, Selene has affirmatively expressed its intention to foreclose, which, in the Hudaks' view, amounts to a breach of contract given Selene's

8

alleged obligation to consider loss mitigation alternatives prior to foreclosure. See Homeland Training Ctr., LLC v. Summit Point Auto. Research Ctr., 594 F.3d 285, 295 (4th Cir. 2010) (citing Miller v. Jones, 71 S.E. 248, 249 (W. Va. 1911)) ("A party can certainly keep a contract alive and sue for anticipatory breach at the same time since West Virginia law expressly allows specific performance as a remedy for anticipatory breach.").

Regardless of the Hudaks' theory of breach, complications arise given that an inherent characteristic of specific performance is its inability to be valued in terms of damages. See Amtote Int'l, Inc. v. PNGI Charles Town Gaming, LLC, 998 F. Supp. 674, 679 (N.D.W. Va. 1998) ("Under West Virginia law, plaintiff cannot seek specific performance if it has an adequate remedy at law.") (citing Mann v. Golub, 389 S.E.2d 734 (W. Va. 1989)). Notwithstanding, courts have determined that, "[i]n a suit for specific performance, the amount in controversy is the value of the property involved." Humble Oil & Refining Co. v. DeLoache, 297 F. Supp. 647, 649 n.1 (D.S.C. 1969) (citing Ebensberger v. Sinclair Refining Co., 165 F.2d 803, 805 (5th Cir. 1948)); see also, e.g., Neuman v. Levan, No. 8:08-3418, 2009 WL 1856580, at *2 (D.S.C. June 26, 2009) ("[W]hen the relief sought is specific performance, the amount-in-

controversy is determined by looking at the value of the property in question.").

Such a rule comports with the more general rule regarding non-monetary relief: "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of litigation." Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977). Such value is ascertained by reference to the greater of either the worth of the remedy to the plaintiff, or its cost to the defendant. See JTH Tax, Inc. v. Frashier, 624 F.3d 635, 639 (4th Cir. 2010).

The Hudaks go to great lengths to demonstrate that loss mitigation review would cost Selene very little, if anything. (Dkt. No. 8 at 5-7). Their focus on Selene, however, overlooks the potential value of loss mitigation review from their perspective. For the Hudaks, the value is not found in the review process itself, but rather derives from the potential that, as a consequence of the review process, they will avoid foreclosure and the loss of their home. As they have asserted in their complaint, "Plaintiffs bring this suit to save their family home." (Dkt. No. 1-2 at 2).

Thus, from the Hudaks' perspective, the pecuniary value resulting from an award of specific performance would be no less

than the value of the home, for which they were originally obligated to pay $130,845. Because that figure exceeds the jurisdictional threshold, the Court **FINDS** that the amount in controversy has been satisfied.[3]

### IV.

Therefore, in conclusion, because diversity jurisdiction exists, the Court **DENIES** the Hudaks' motion to remand.

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: April 7, 2015.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE

---

[3] Because the specific performance sought by the Hudaks satisfies the amount in controversy, the Court need not consider the value of any other relief.